**Application of Marvin LEGATOR.**
**Patent Appeal No. 7461.**

United States Court of Customs and Patent Appeals.

Nov. 10, 1965.

Frank R. LaFontaine, Arthur B. Bakalar, Emeryville, Cal., for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–3 and 6 in appellant's application serial No. 109,821, filed May 15, 1961, for "Control of Microorganisms." No claims have been allowed.

The invention relates to a method for controlling noxious microorganisms encountered in the manufacture of paper, particularly those responsible for slime and corrosion formation in the recycled "white water."

Claim 1 is illustrative:

1. A method for combatting slime-forming and corrosion-promoting microorganisms in the aqueous system of a paper-manufacturing plant, said method comprising maintaining in that part of said aqueous system in which recycled white water is present an effective concentration of acrolein amounting to at least 0.1 but not exceeding 1.5 parts per million by weight of the aqueous system.

Claim 2 is identical to claim 1 except for the further limitation, "with the numeric products of the concentration of acrolein in parts per million by weight of the aqueous system and the time of contact in minutes between the acrolein and the microorganisms to be controlled being at least 125." Claim 3 is similar to claim 1 but is directed to the combatting of slime-forming microorganisms only. Claim 6 is dependent on claim 1 and recites an acrolein concentration from 0.4 to 0.6 parts per million.

The single[1] issue presented is obviousness within the meaning of 35 U.S.C. § 103 in view of the following reference:

Vollrath et al., "Bactericidal Properties of Acrolein," 36 Proc. Soc. Exp. Biol. and Med. 55–58 (1937).

Vollrath deals broadly with "the problem of identifying the active agent in garlic," the vapors escaping from freshly crushed garlic and onions having been known to be "extremely active bactericides" and of "therapeutic value, especially in the treatment of tuberculosis." After disclosing this agent as acrolein (allyl aldehyde), Vollrath describes the procedures and results of

---

[1]. The examiner had rejected claims 1–3 and 6 over "Vollrath and taken either with or without Yoder," U.S. 2,801,216, July 30, 1957, but the board did "not find the Yoder patent to be sufficiently specific to the claimed subject matter to warrant its use as a reference."

tests "to determine the bactericidal activity of aqueous acrolein solutions upon bacteria immersed in the solution," which results are set out in Table I:[2]

### TABLE I.

Bactericidal Effects of Acrolein Solutions.

|  | | Albumin absent | | | | Albumin present | | | |
|---|---|---|---|---|---|---|---|---|---|
| Time, hr. | | 6 | 12 | 24 | 48 | 6 | 12 | 24 | 48 |
| *E. Coli* | | | | | | | | | |
| Conc. | | | | | | | | | |
| 1/100 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1/1,000 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1/10,000 | | 1 | 0 | 0 | 0 | 1 | 1 | 0 | 0 |
| 1/100,000 | | 3 | 2 | 0 | 0 | 4 | 4 | 3 | 4 |
| 1/1,000,000 | | 4 | 3 | 2 | 0 | 4 | 4 | 3 | 4 |
| 1/10,000,000 | | 4 | 3 | 2 | 0 | 4 | 4 | 4 | 4 |
| Control | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| *B. Subtilis* | | | | | | | | | |
| 1/100 | | 4 | 2 | 0 | 0 | 4 | 4 | 4 | 3 |
| 1/1,000 | | 4 | 4 | 2 | 4 | 4 | 4 | 4 | 4 |
| 1/10,000 | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| 1/100,000 | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| 1/1,000,000 | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| 1/10,000,000 | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| Control | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

Vollrath further says:

The fact that detectable amounts of acrolein appear in the breath after injection of acrolein [referring to an experiment by Lewin] suggest[s] its possible value as a disinfectant of the respiratory tract. Since it is lethal only in large amounts and bactericidal in small amounts, we propose to investigate its therapeutic possibilities further.

*Summary.* The well known sulfides responsible for the peculiar odor of garlic are not responsible for its bactericidal activity. Acrolein was found to be a highly active bactericide. Its properties are such that it gives promise of being a respiratory disinfectant. Its general properties suggest that it or related compounds may be the bactericide of garlic.

The Patent Office position is that the prior art has admittedly used chemicals, more particularly bactericides, in controlling microorganisms in paper mill waters, that Vollrath discloses acrolein to be a bactericide effective against two of the specific bacteria appellant seeks to combat when applied in dosages sufficiently small to avoid injury to paper mill personnel, and that it would therefore be obvious to one of ordinary skill in the paper manufacturing art seeking to combat slime and corrosion-forming microorganisms to apply acrolein to the aqueous stream. The specific concentrations to be employed would be worked out by one of ordinary skill through routine experimentation, according to the board.

Appellant contends his invention is *not* merely the use of acrolein as a bactericide broadly, but rather the use of acrolein in a particular environment, in a particular, even critical, amount and for a particular purpose. That purpose, according to appellant, is to combat a

2. The number 4 in Table I indicates growth equivalent to that of the control; zero indicates no growth. The figures 1, 2, and 3 indicate intermediate degrees of growth.

*wide* spectrum of not only bacteria but slime-forming fungi as well. Hence, the agent to be selected must satisfy a number of requirements: it must be effective against a wide range of microorganisms; it must persist, i. e., it must be inert to other material in the stream such as large quantities of pulp and other proteinaceous matter; it must be colorless to avoid coloration of the finished product; and it must not be toxic or otherwise harmful to mill personnel.

Appellant urges further that his is a selection invention in that a satisfactory toxicant [3] in this art is found only after very exhaustive screening tests and that many *apparently* outstanding candidates are frequently rejected. Moreover, acrolein allegedly would have been rejected at the outset of this testing by reason of its obnoxious odor, its reactivity, and its toxicity to man. It was not until his invention, according to appellant, that the use of acrolein in paper manufacturing would have been obvious as a corrosion or slime-formation preventative. The board assertedly erred because, inter alia, it failed to consider *all* of these physical, chemical, and physiological properties of acrolein and looked only to its biological properties instead.

■ We agree with appellant that *all* properties of acrolein must be considered *in light of all* the requirements for a suitable agent when considering the question of obviousness of the claimed invention. In re de Montmollin and Riat, 344 F.2d 976, 52 CCPA ——, citing In re Papesch, 315 F.2d 381, 50 CCPA 1084. This, we think, the board failed to do. Further, Vollrath says nothing, and suggests nothing, about the use of acrolein to combat the broad range of slime or corrosion-forming microorganisms found in paper mill waters.

The most significant portion of Vollrath, we think, is the above table. E. Coli and B. Subtilis, to be sure, are two of the *many* bacteria appellant seeks to combat. It will be noted, however, that with no albumin present, a period of more than 6 hours is required before *any* effect on E. Coli is noted at a concentration of 1.0 ppm. (1/1,000,000). With albumin present *no* effect is seen until about 1 day, there being *no net effect* after 2 days.[4]

As to B. Subtilis, a concentration of 1000 ppm. (1/1,000) is required before any bactericidal effect is noted, there being none after two days even with albumin absent. This is well beyond the claimed range and, for one skilled in the paper art, is a teaching *away* from appellant's invention.

■ Concluding, we believe that when all factors bearing on the question of obviousness are weighed, including an examination of the entire disclosure of Vollrath, as opposed to selected portions thereof, the *claimed* invention must be held *not* to have been obvious at the time it was made to one of ordinary skill in the art.

The decision of the board is reversed.

Reversed.

MARTIN, Judge (concurring).

The Vollrath reference should be considered in its entirety. Thus I do not agree that part of it can be characterized properly as teaching away from appellant's invention. It is an apparent contribution to the art, that slime formation may be reduced to more manageable proportions, that persuades me to resolve doubt in favor of appellant.

3. Appellant's brief points out that the terms "disinfectant," "slimicide," "bactericide," and "fungicide" are variously used, but since in the invention acrolein serves *all* of these purposes, it will be designated "toxicant."

4. The significance of the presence of albumin is debated—the Patent Office saying it should be disregarded since albumin is not to be found in paper mill waters, at least to much extent, and appellant contending it is indicative of the effect of the presence of protein, of which there are allegedly large quantities in the particular waters in which his process operates.